J. Ibwin Shapibo, J.
This cause, by stipulation on the record, was tried by the court without a jury.
*580 Plaintiffs are former tenants of the defendant, 655 East Fordham Road Realty Corp. (hereinafter called the landlord). Their lease was for a loft on the fourth floor of premises 655 East Fordham Road, for a term commencing on January 3,1949 and expiring on January 2, 1952. Upon the expiration of this lease plaintiffs continued in possession as statutory tenants.
On or about March 7, 1952, the landlord, by the defendant Cerussi as its agent, instituted a summary proceeding to recover possession of the loft occupied by plaintiffs. The verified petition recited: 1 ‘ That on or before January 24-th, 1945 B. Peter Cerussi, petitioner herein owned and still owns at least 90 per cent of the stock of the 655 East Fordham Road Realty Corp., which owned and owns the entire premises demised as aforesaid, and said B. Peter Cerussi seeks in good faith to recover possession of the business space for his own immediate and personal use.”
As the result of the trial of this proceeding, at which the defendant Cerussi testified in support of the allegations of the petition, a final order was issued awarding to the landlord possession of the plaintiffs’ loft. The issuance of the warrant of dispossess was first stayed to and including May 21,1953, and thereafter, until August 31, 1953. The plaintiffs surrendered possession of the loft to the landlord on July 31,1953, pursuant to and in compliance with the provisions of the aforesaid final order.
The plaintiffs in this action now claim that the defendants Fordham and Cerussi failed to occupy the fourth floor loft within 30 days subsequent to their dispossess and actively to conduct business therein, and that by reason thereof, they, the plaintiffs, are entitled to recover damages from both defendants for the unlawful dispossession.
Section 8 of the Commercial Rent Law (L. 1945, ch. 3, as amd. by L. 1953, ch. 451), entitled “ Grounds for removal of tenant from possession ” as it existed when this action accrued, so far as here material, provides:
“ So long as the tenant continues to pay the rent to which the landlord is entitled, under the provisions of this act, no tenant shall be removed from any. commercial space, by action or proceeding to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated, and notwithstanding the issuance of any order to dispossess, warrant or process prior to January twenty-fourth, nineteen hundred forty-five, and regard *581 less of any contract, lease, agreement or obligation heretofore or hereafter entered into which is inconsistent with any of the provisions of this act, unless:
* # #
“ (d) (1) * * * possession is sought by a person who acquires title to the building or other rental area subsequent to such date [January 24, 1945] or to give possession to a person who subsequent to such date acquires at least ninety per centum of the stock of a corporation which owns property in which commercial space is located, and who likewise seeks in good faith to recover possession of the commercial space for his immediate and personal use * * *. [Italics ours.]
# % #
(3) * * * If such landlord or such person shall fail, after thirty days subsequent to dispossessing a tenant under the provisions of this subdivision, to occupy such space and actively to conduct such business therein * * * he shall be liable to the tenant for all damages sustained on account of such removal e
To facilitate the trial of the action the court directed that the proof of the parties be first addressed to the issue of whether the defendants had failed within 30 days to occupy the premises in question and actively to conduct business therein. This was done, and at the completion of the proof upon that issue, the court stated its opinion on the record sustaining the plaintiffs’ right to recover herein.
It may not be amiss to note that the testimony submitted on behalf of the defendants, in an effort to show that defendant Cerussi went into possession and used the loft from which the plaintiffs had been dispossessed to conduct his business therein, was rejected by the court because of its incredible nature.
Here was a loft containing 6,500 square feet which the defendants claimed was used by them for the assembly of tables, etc., in which there was no electric current, the electric power having been turned off by Consolidated Edison Company on July 31, 1953, at the request of the departing tenants —the plaintiffs. There was no electric power in that loft until April 9,1954, when service was restored to part of the loft at the request of Fordham Co. Inc., not a party to this action, and the remainder of the loft had no electric current until October 21,1954, when at the request of Alton Instrument Company, apparently a new tenant, the current was turned on. The defendant Cerussi admitted that from time to time it was necessary to use an electric hand drill in his business, but contended that on such occasions an electric *582 wire was plugged into an outlet in the hall with the cord running therefrom into the loft. The court regarded this contention as fantastic and refused it any credence.
Moreover, at the trial of the summary proceedings, defendant Cerussi testified that if he obtained possession of the premises, he would immediately spend $10,000 in improving the loft, of which $5,000 would be for machinery with "which to operate his business. The proof shows, without contradiction, that not one penny was spent on machinery or otherwise, and that at most, there were between two to seven work benches placed in the loft. These work benches were temporary makeshift affairs, consisting of some pieces of lumber laid across wooden horses.
The court credited, in its entirety, the testimony of the witness Dreyer, who stated that he visited the loft on December 18,1953,. and found the door unlocked; that he went in and saw some loose pieces of lumber and wiring- on the floor, with a considerable amount of debris all around; that there was no one in the loft and that there were no machines or work benches therein. He also testified, and the court finds as a fact, that in a conversation with defendant Cerussi, with a view of renting the loft, Cerussi told him that while the whole loft was vacant, he, Cerussi, was not going to stick his neck out and rent it except as of August 1, 1954, and that the rent on a three-year-rental basis would be $325 per month.
Under the circumstances, the court was compelled to and did conclude that neither of the defendants ever did any business in the fourth-floor loft, and that the only use they may have made thereof was for the storage of marble. Just when this storage began is not clear from the record; what is clear is that the defendants did not use the premises for any purpose at all, at least until December 18, 1953 — more than 30 days after the stay of the warrant expired — and that in seeking possession of the premises the defendants did not act in good faith because defendant Cerussi never had any intention of using it to conduct his business therein. (Fromer v. Glamour-Wear Mfg. Co., 276 App. Div. 420). Of course, the use of the premises for storage purposes — even if they were in fact so used — would not constitute compliance with the terms of the statute. (Stambler v. Rite-Glo, Inc., 83 N. Y. S. 2d 100 [Beldock, J.], affd. 275 App. Div. 968.)
Accordingly, in the language of the statute, the plaintiffs are entitled to recover ‘ ‘ for all damages sustained on account of such removal.” In other words, they are entitled to be made whole for every cent of damage caused them through their improper and illegal eviction from the premises by the defend *583 ants. That does not mean, however, that the plaintiffs are entitled to profit simply because the defendants have wrongfully caused their removal. This, however, is precisely what the plaintiffs are attempting to do. The items of damage claimed by them not only encompass moving costs, the expense of dismantling machinery, the installing of electric appliances in the new loft, and painting the new loft, both inside and outside, but also the alleged differential in the rent between the old and the new premises — notwithstanding that the new loft covered 10,500 square feet and the old 6,500.
The court is not convinced that the plaintiffs ever made a serious effort to obtain a loft equal in area to that which they were forced to vacate. In support of their rent differential claim one of the plaintiffs stated that they ‘ ‘ wound up with a rental of $12,000 per year ’ ’ at the new loft as against $3,000 per year at the old. That statement the court finds was intended to convey the impression that the plaintiffs were paying $9,000 more rent for the new loft than they paid for the old. This is untrue for, at the very last moment of the trial, and by reason of a question asked by the court, it developed that the plaintiffs were not tenants in the new loft building but were, in fact, the owners thereof. There is no proof in the record that it was necessary to purchase this building, nor did the plaintiffs prove the elements needed to compute the net cost to them of 6,500 square feet of space. Under these circumstances, this item of damage is disallowed.
In the main, the proof adduced by the plaintiffs failed to show how much of the expense incurred in preparing their new loft was or should have been allocated to 6,500 square feet of space. With respect to those items of damage the court, where warranted by the record, has charged defendants with 13/21 of the expense, that being the proportion which a loft of 6,500 square feet bears to one of 10,500 square feet. To compel them to respond in damages for the expense of the larger loft obtained by the plaintiffs would, in this court’s opinion, be inequitable. With regard to some items of damage, the court could not make any allocation, and, therefore, these were disallowed for plaintiffs’ failure to sustain the required burden of proof. One example will suffice: plaintiffs’ proof showed that not only was the entire new loft painted inside but outside as well. Obviously, the court cannot speculate as to what portion of the cost thereof should be returned to the plaintiffs.
Totalling the items of damage which have been allowed in their entirety and those which have been allowed on the *584 basis of the 13/21 ratio above referred to, the court finds that the plaintiffs are entitled to judgment in the sum of $7,909.85 with interest from October 1, 1953 together with the costs and disbursements of this action.
At the conclusion of the trial, the complaint was tentatively dismissed against the defendant Cerussi, the 90% stockholder of the landlord, the corporate defendant herein. When plaintiffs’ trial counsel protested this disposition contending that his clients had a right to recover not only against the landlord but also against Cerussi, since it was he who alleged in the summary proceedings that he would take possession of the premises, the court stated that it would change its determination upon the plaintiffs’ submission of authorities sustaining Cerussi’s liability. No such authorities have been submitted nor found by the court upon its own research.
We are dealing here with statutory and not common-law liability, and we must,' therefore, look to the statute alone for the legislative intent as to who should be cast in damages for the failure, after 30 days subsequent to the dispossess, to occupy and actively to conduct business in the space from which the tenants have been dispossessed.
Unfortunately, the statute has little to commend it for clarity in that respect. The second paragraph of subdivision (3) provides: “ If such landlord or such person shall fail, after thirty days subsequent to dispossessing a tenant * * * to occupy such space and actively to conduct such business therein * * * he shall be liable to the tenant for all damages sustained on account of such removal * * (Emphasis supplied.)
To construe the word “ he ”, as used above, as having reference to the person on account of whom the dispossess was made — in the case at bar, the defendant Cerussi, the 90% stockholder of the landlord corporation — would ignore the fact that the clause “If such landlord or such person” shall fail, etc., must be read in light of paragraph (1) of subdivision (d) of the statute. In that subdivision a landlord who, on or before January 24, 1945, owned or acquired an enforcible right to buy or take possesion of a building or other rental area could, in good faith, seek to recove? possession for his immediate and personal use; or a person who, after such date, acquired title to the building or other rental area could recover possession for his immediate and personal use or to give possession to a person who, subsequent to such date, acquires at least 90% of the stock of the corporation which owns property in which commercial space is located, or pos *585 session is sought by such landlord or by such person to give possession to another person who is a subsidiary corporation, at least 90% of whose stock is owned by such landlord or such person, and such landlord or such person seeks in good faith to recover possession of the commercial space for the immediate and personal use of such subsidiary corporation.
It seems to the court that the words “ he shall he liable to the tenant for all damages sustained on account of such removal ” have reference to the landlord who owned or acquired an enforcible right to buy or take possession on or before the date mentioned, as provided in paragraph (1) of subdivision (d), or to a person, i.e., a landlord, who acquired title to the building or other rental area subsequent to such date, irrespective of whether one or the other sought in good faith to recover possession for his own immediate and personal use, or to give possession to the other persons (the 90% stockholder or the subsidiary corporation) mentioned in that subdivision. Clearly, such other persons were not qualified to dispossess tenants or to become parties to summary proceedings to obtain possession of commercial space. The fact that the defendant Cerussi verified the petition in the summary proceedings to dispossess the plaintiffs is unimportant since he did so as agent for the landlord — the corporate defendant herein — and not individually. The statutory liability created by section 8 of the Commercial Rent Law cannot, therefore, be imposed upon him.
Accordingly, the complaint is dismissed against the defendant Cerussi, and judgment, as provided above, will be entered against the corporate defendant alone. Said defendant is allowed 30 days’ stay of execution and 60 days in which to make and file a case on appeal. This memorandum constitutes the decision of this court within the meaning of section 440 of the Civil Practice Act.